IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OTERO VAZQUEZ, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> ORTIZ CHEVRES, *et al.*, <br><br> **Defendants.** | **CIVIL NO.** 10-1605 (JAG) |

**OPINION & ORDER**

Garcia-Gregory, D.J.

Pending before the Court is a Report and Recommendation on Defendants' motion for summary judgment. (Docket No. 96). After *de novo* review, the Court concurs with the Magistrate Judge's recommendation to grant summary judgment. Therefore the same is hereby ADOPTED. However, as discussed in detail below, the Court provides an alternate basis for reaching the same result on certain claims.

I. INTRODUCTION AND BACKGROUND[1]

Nivea Otero Vázquez ("Otero") and Janet I. Pedroza Rivera ("Pedroza") are career employees of the Municipality of

---

[1] For the sake of brevity, the Court incorporates the Magistrate Judge's introduction and assumes the reader's familiarity with the facts and analysis laid out in the Report and Recommendation.

Naranjito who claim that officers affiliated with the Partido Nuevo Progresista ("PNP") relegated them to "menial tasks and repetitive work" because of their lifelong affiliation with the Partido Popular Democrático ("PPD"). Joined by Pedroza's husband and conjugal partnership, they sued six municipal officers in their individual and official capacities: the Mayor, Orlando Ortiz Chevres ("Ortiz"); the Director of Federal Programs, Charity Rivera Vázquez ("Rivera"); the Director of Finance, Carmen R. Matos Sánchez ("Matos Sánchez"); the Director of the Internal Audit Office, Emmanuel Matos García ("Matos García"); the Director of Purchasing, Carlos Ríos ("Ríos"); and the Director of the Human Resources Office, Marialis Figueroa Negrón ("Figueroa"). Plaintiffs seek damages under 42 U.S.C. § 1983 for alleged violations of their rights under the First and Fourteenth Amendments, as well as for violations of Puerto Rico's constitution and statutes. (Docket No. 1).

Defendants moved for summary judgment. (Docket No. 69). Plaintiffs opposed, (Docket No. 84), and the filings were referred for a Report and Recommendation (the "Report"). (Docket No. 79). Plaintiffs objected, and Defendants offered their response to those objections. (See Docket Nos. 97 and 98). We now examine the Report in light of Plaintiffs' objections.

II.  **STANDARD OF LAW**

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of

evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### III. ANALYSIS

From the outset, the Magistrate Judge tossed Plaintiffs' equal protection claims as well as the claims brought by Otero and Pedroza's spouses. Plaintiffs did not object to these determinations. (See Docket No. 97 at p. 2). Therefore, those claims shall be dismissed with prejudice.

Moving on to the crux of the case, the Magistrate Judge found that neither Plaintiff established a *prima facie* case of political discrimination. To prove such a claim, Plaintiffs had

to show that (1) that the plaintiff and defendant had opposing affiliations; (2) that the defendant knew the plaintiff's affiliation; (3) that a materially adverse action took place, and (4) that political affiliation was a substantial or motivating factor in that action. See Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006). Regarding Otero, the Magistrate found that with the exception of Matos Garcia, Plaintiffs failed to show that any defendant participated in the alleged adverse employment actions. Still, the Report concluded that Plaintiffs did not set forth a coherent argument showing that "[Otero's] PPD affiliation was the cause of Matos Garcia's adverse actions." (Docket No. 96, p. 23). With regard to Pedroza, the Magistrate Judge found that though the evidence hinted at triable issues on prongs two and three, it failed the first one. Simply put, Plaintiffs had failed to show that the defendants were even aware of Pedroza's political affiliation.

The Magistrate Judge issued a structured and well-organized Report, offering reasoned analysis on each prong of the *prima facie* case, and independently for each employee. In presenting their objections, Plaintiffs curiously chose to ignore the Report's outline and blend together their arguments regarding Otero and Pedroza. Plaintiffs' arguments also appear to bounce unpredictably between prongs of the *prima facie* test. As a

result, the Court is hard pressed to decipher logic and meaning from their filing. "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997); see also U.S. v. Eirby, 515 F.3d 31 (1st Cir. 2008)(deeming waived an argument that is "confusingly constructed and lacking in coherence"). Plaintiffs' objections arguably fail to "specifically identify the portion of the proposed [...] recommendation or report to which an objection is made" and also fail to provide a coherent "legal basis for such objection." See Local Rule 72(d). Nevertheless, and in an abundance of caution, we will consider Plaintiffs' objections to the Magistrate Judge's Report. For clarity, the Court will follow the outline of issues as presented in the Report.

   1. Otero's Prima Facie Case

   The Magistrate found that Plaintiffs faltered on the third and fourth prongs of Otero's *prima facie* case. As to defendant Matos Garcia, the Magistrate found that a reasonable jury could conclude he caused two materially adverse employment actions: first, that he removed Otero from her private office and into a public workspace, thereby depriving her of the privacy necessary for that post; and second, that his "directives to the Municipal

Clerk permit the conclusion that he kept Otero from retrieving documents she needed to complete her assigned duties." (Docket No. 96, p. 21). Finally, the Magistrate Judge determined that the other defendants (Ortiz, Figueroa, and Rivera) did not participate in the adverse actions mentioned above, and that the other alleged adverse employment actions did not rise to the level of actionable adversity.

a. Whether there were materially adverse employment actions

Before delving into Plaintiffs' objections, we examine *sua sponte* the Magistrate's finding of materially adverse employment actions against Otero. The Court considers that, studied in context, neither action identified by the Magistrate is sufficient to meet the standard of material adversity articulated in Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989) (en banc), abrogated on other grounds by Maldonado v. Fontanés, 568 F.3d 263 (1st Cir. 2009). We therefore reject these findings, and provide an alternate ground for dismissing Otero's political discrimination claim against defendants.

"Actions of informal harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for first amendment claims if the motive was political discrimination; but this is so only if the discriminatory acts

are 'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 40 (1st Cir. 2007)(quoting Agosto-de-Feliciano, 889 F.2d at 1217); see also Rutan v. Republican Party of Ill., 497 U.S. 62 (1990). Not just any harassment will suffice; in conducting this analysis, courts must "sift out the chaff of minor irritants and frustrations from the wheat of truly significant adverse actions" taken by the employer. Agosto-de-Feliciano, 889 F.2d at 1214. And that line is crossed where "the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Id. at 1218. The kicker is that, unlike political motivation, which can be established by a preponderance of the evidence, Plaintiffs must offer clear and convincing evidence that the new job is unreasonably inferior to the prior one. Id. at 1220.

To determine whether this standard is met, the Court must "canvass the specific ways in which [Otero's] job has changed." Agosto-de-Feliciano, 889 F.2d at 1218. That is, the Court must decide if "the position she occupies now materially differs from the position as it existed previously." Ortiz García v. Toledo Fernández, 405 F.3d 21, (1st Cir. 2005). Armed with this guidance, we proceed to examine whether the two actions

identified by the Magistrate meet this strict standard of severity.

### Otero's Private Office

Before the administration change in 2009, Otero occupied a career position as an "Auditor" for the Municipality of Naranjito. (Docket No. 84-1, p. 5, ¶ 21).[2] She was also the "acting Internal Auditor in charge of the Internal Auditor's Office." Id. This latter position, in contrast to the first, was a trust position. (Id. at ¶ 22). That title also came with the perk of a private office, "located within the work area occupied Municipality of Naranjito's Internal Auditing department." (Id. at ¶ 25). The office in question "had always been used by the Internal Auditor or by the acting Internal Auditor." (Id.).

When the new mayor was elected, Otero remained as an "Auditor," but the trust position of "Internal Auditor" was assigned to defendant Matos Garcia. (Id. at ¶ 23). Shortly after assuming his tenure, Matos García asked Otero to move her belongings to another desk, located outside the private office.

---

[2] In opposing Defendants' statement of uncontested facts, Plaintiffs failed to support many of their assertions with citations to record material. See Local Rule 56. Therefore, unless otherwise specified, those facts are found uncontested. See Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007)("If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested.").

Case 3:10-cv-01605-JAG Document 99 Filed 09/05/13 Page 10 of 17
**CIVIL NO.** 10-1605 (JAG)                                              10

(Id. at ¶ 27). By the third day after Matos García's request, Otero had not moved. (Id. ¶ 27, 40). One day, when Otero had told Matos García she would be late to work, he got help from other municipal employees and moved her desk and the documents on it before she arrived. (Id. at ¶ 28).

As the First Circuit anticipated in Agosto-de-Feliciano, merely losing the perk of the position, such as "the best office" or "unlimited telephone access," would not be enough to meet the standard of materiality. See Agosto-de-Feliciano, 889 F.2d at 1219. But even "slight factual variations" between cases might be enough to change that outcome. Id. Here, that variation turns on privacy concerns. The Magistrate concluded that, since Otero's new workplace lacked the privacy necessary for an auditor, her removal resulted in unreasonably inferior work conditions. We disagree.

Otero believed that since she had "practically the same" responsibilities as Matos García and dealt with confidential documents, moving her to a desk in a public area was not appropriate. (Id. at ¶ 31). Given the strict standard of proof required here, Otero's beliefs are insufficient to sustain her burden. Aside from her conclusory statement, there is no "clear and convincing" evidence showing that the director of the Internal Audit department and an Auditor had similar duties and

thus required the same level of privacy. It is uncontested that the private office came with the trust position, and there is no evidence suggesting another equally private workspace was even available.[3] There is also no evidence showing that private offices are the norm for a municipal auditor, or that Otero's job description as an Auditor grants her such a right. See Ortiz-Garcia, 405 F.3d at 24 (Plaintiff's job description did not "indicate that she had a right [or] need" for private parking and personal telephone). Like in Ortiz-Garcia, Plaintiffs have not "presented evidence comparing her present duties to her duties when she previously held the position." Id. Therefore, Plaintiffs have failed to place us in a position to distinguish between the duties and prerogatives Otero had as an Internal Auditor *vis a vis* her current position as an Auditor.

Moreover, the situation described above is not the type of impediment that has usually resulted in a finding of adverse action. A prototypical case is Rodríguez-García v. Miranda-Marín, 610 F.3d 756 (1st Cir. 2010), in which the plaintiff alleged that her unsolicited transfer from the Public Works Department to the Office of Federal Funds amounted to an adverse employment action. The First Circuit agreed; though "she

---

[3] Though Otero recalls Matos García promising a private cubicle, she also admitted that she never asked Matos García for her own private space, either orally or in writing. (Id. at ¶ 36).

retained the same job title and salary after her transfer to Federal Funds, her job duties and working environment were substantially altered." Id. She was "assigned to work in a windowless storage area alongside cleaning materials and inactive files," and "spent most of her time doing nothing." Id. at 767; see also Grajales v. P.R. Ports Authority, 682 F.3d 40, 49 (1st Cir. 2012)(finding, at the pleading stage, that plaintiff's "involuntary transfer to a remote and inconvenient work station," *adding 90 minutes to his daily commute*, "qualifies as an adverse employment action"); cf. Ortiz García v. Toledo Fernández, 405 F.3d 21 (1st Cir. 2005)(finding no materially adverse action where *inter alia* the employee lost benefits of parking space and personal telephone).

Certainly, Matos Garcia's decision to leave Otero without a private workspace could reflect a questionable security policy, as Otero also worked with confidential documents. But that is irrelevant. The question is whether the new arrangement would exert sufficient pressure on Otero to change her political beliefs, or at least make her question them. On that point, there is a conspicuous absence of evidence suggesting that Otero's removal worked *any* physical or mental inconvenience on her, aside perhaps from the fact that she could not be as carefree with the documents she was working on. But even so,

Plaintiffs make no showing that the new working arrangement had *any* negative effect on Otero's job performance – there is no evidence that she received any reprimand or unfavorable job reviews resulting from this arrangement. In short, there is no "clear and convincing" evidence suggesting that the office rearrangement spotlighted here would place "place substantial pressure on even one of thick skin to conform to the prevailing political view." See Agosto-de-Feliciano, 889 F.2d at 1218.

New Security Policy Regarding Documents

The Magistrate concluded that "Matos García's directives to the Municipal Clerk permit the conclusion that he kept Otero from retrieving documents she needed to complete her assigned duties." (Docket No. 96, p. 21). But Plaintiffs' case weakens fatally as one examines the evidence, or lack thereof. See Martínez-Vélez v. Rey-Hernández, 506 F.3d at 42. There is *no* evidence, let alone any that would meet the "clear and convincing" standard, lending credence to the notion that Matos García implemented a directive that resulted in an "unreasonably inferior" work situation for Otero.

It is uncontested that Matos García, as head of the Internal Audits department, "ha[d] discretion as to how to safeguard documents, gather information, and institute procedures." (Docket No. 84-1 at p. 12, ¶ 50). Accordingly,

Matos García decided to divide the work assigned in his department, "so that the Department's secretary would be the one responsible for picking up documents needed in the audit work." (Id., p. 12 at ¶ 51). Matos Garcia, however, never told Otero about this new procedure. (Id., p. 10 at ¶ 42). One day, when Otero went to "pick up some files for an audit she was conducting, the Director of that Office indicated that by instructions from [Matos García] the documents were confidential and that only Mr. Matos could pick up confidential documents." (Id. p. 10 at ¶ 42).

Plaintiffs assert repeatedly that through this new policy, Matos García "would not allow [Otero] to have access to the documents she needed in order to conduct her job," and that in effect, "Otero was not given any documents to complete her duties." (See id. at p. 10, ¶¶ 42, 44, 45). This statement is overblown, to say the least. The record simply does not contain evidence that, even once, Otero failed to perform her job duties because she could not obtain the necessary documents. At most, and taken in the light most favorable to Plaintiffs, the record shows that the new policy required Otero to procure the documents she needed through either Matos García or the

Secretary.[4] Moreover, nothing suggests that Otero was *prohibited* from asking the Secretary to fetch those documents for her. The record, in fact, shows otherwise. Otero *admitted* that she could procure the documents she needed for her audits by sending a letter to the director of the agency, and then waiting for the Secretary to pick those documents up. (See Docket No. 71-3, p. 44). As with the situation described above, there is nothing on the record indicating that Otero was substantially inconvenienced by this requirement, or that her job performance suffered from it. Therefore, though this new step might have been burdensome,[5] it is not sufficient to constitute a materially adverse employment action.

b. <u>Causation as to Matos García</u>

The Magistrate Judge concluded that even if materially adverse actions were present, Plaintiffs theory of causation was undeveloped and therefore waived. We agree. In their objections, however, Plaintiffs stress that the Magistrate did not consider evidence of a "highly politicized atmosphere" before deciding to defenestrate their claim. Even assuming that this evidence would allow the conclusion that Matos Garcia's actions were

---

[4] (See e.g., Docket No. 84-1 at p. 11, ¶ 45 & 46) ("Defendant Emmanuel Matos indicated that he would send Ms. Nivea Otero," or the secretary, Brenda, to pick up confidential documents).

[5] Even this is a stretch; Plaintiffs cannot seriously argue that Otero's work situation was *worsened* by having the Secretary fetch documents for her.

Case 3:10-cv-01605-JAG Document 99 Filed 09/05/13 Page 16 of 17
CIVIL NO. 10-1605 (JAG)                                       16

politically motivated –an argument that is not cognizably fleshed out in the objections- the fact remains that Plaintiffs did not place the Magistrate in a position to consider such evidence. (See Docket No. 96 at p. 23). They do not get a second bite at the apple now. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round"). Accordingly, the Court ADOPTS the Magistrate's recommendation; summary judgment shall be granted to Defendants on Otero's political discrimination claims.

   2. Pedroza's Prima Facie Case

   Regarding Pedroza, the Magistrate found that there was no evidence establishing a triable issue on whether Defendants were aware of Pedroza's political affiliation. Plaintiffs appear to object to this conclusion, but do not explain why the Magistrate Judge's appreciation of the evidence is wrong.

   Plaintiffs seem to argue that, since Defendants were aware of Otero's political affiliation, the Magistrate should have found the same for Pedroza. Regarding Otero, the Magistrate found that Ortiz, the new Mayor, stated outright that he

believed Otero was a PPD partisan. And the Magistrate also found that Otero's replacement as the head of Internal Audits, Matos Garcia, would also likely know of her predecessor's political alignment. But the facts supporting such a conclusion in favor of Otero are absent in Pedroza's case. Specifically, the Magistrate found it "undisputed that for a period of three years, including the 2008 election cycle and throughout the events narrated in the complaint, Pedroza was not active in the party." (Docket No. 96 at p. 24). "[O]ther than drawing on generalizations about 'a small town where everybody knows each other,' […] plaintiffs fail to identify any record evidence that the individual defendants came to know Pedroza's PPD partisanship." (Id.). Examining the record anew, the Court agrees with the Magistrate. Therefore, the Court will also ADOPT the Magistrate's recommendation regarding Pedroza's claims.

## CONCLUSION

For the reasons stated above, summary judgment is granted in favor of Defendants. Judgment shall follow accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of September, 2013.

                                        S/ Jay A. García-Gregory
                                        United States District Judge